UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PRAKASH KADEL,

                              Petitioner,

        v.

DREW BOSTOCK et al.,

                              Respondent.

CASE NO. 2:26-cv-01608-DGE

ORDER GRANTING
PETITIONER'S PETITION FOR
WRIT OF HABEAS CORPUS
(DKT. NO. 1)

This matter comes before the Court on Petitioner Prakash Kadel's petition for writ of habeas corpus.  (Dkt. No. 1.)  Having reviewed the petition, the return memorandum (Dkt. No. 8), the traverse (Dkt. No. 11), and all supporting materials, the Court GRANTS the petition and ORDERS Respondents to provide an individualized bond hearing.

I       BACKGROUND

A.  Factual Background

Petitioner is a native and citizen of Nepal.  (Dkt. Nos. 2 at 1; 10-1 at 2.)  Petitioner speaks and understands the Dangaura Tharu and Nepali languages.  (Dkt. No. 2 at 1.)  Petitioner entered

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

the United States on January 15, 2025 near Tecate, California "without the necessary legal documents to enter, pass through, or remain in the United States." (Dkt. No.10-1 at 3–4.) That same day, Petitioner was apprehended by a Border Patrol Agent, transported to the San Diego Central Processing Center, and taken into custody for expedited removal. (*Id*. at 3–4.) He was then placed in expedited removal proceedings and ordered removed. (Dkt. No. 10-2.)

Petitioner was transferred to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma on February 2, 2025 pending removal. (Dkt. No. 9 at 2.) After claiming fear of removal, Respondent was placed into removal proceedings through the issuance of a Notice to Appear ("NTA") on March 29, 2025. (Dkt. Nos. 9 at 2; 10-3.) Petitioner was scheduled for an initial removal hearing (master calendar hearing) on April 10, 2025. (Dkt. No. 10-3 at 2.)

The April 10, 2025 hearing apparently was continued as the record indicates Petitioner appeared for subsequent master calendar hearings on May 7, 2025 and May 20, 2025. (Dkt. Nos. 9 at 2; 10-4; 10-5.) At these two hearings, Petitioner feigned an inability[1] to understand the court-provided interpreters, who spoke both Dangaura Tharu and Nepali. (Dkt. Nos. 10-4 at 4–6; 10-5 at 5–8.) As a result, Petitioner's master calendar hearing was continued to June 25, 2025, where Petitioner reconfirmed his ability to speak and understand Dangaura Tharu and Nepali. (Dkt. No. 10-6 at 3–5.)

Petitioner filed for asylum but had difficulty paying the required fee because of Respondents' online payment system, which caused delays in the presentment of his asylum

---

[1] At his June 25, 2025 hearing, Petitioner made a statement that he "had problems understanding" one of the prior interpreters. (Dkt. No. 10-6 at 9.) However, Petitioner provides no explanation for why he continually did not speak rather than clarify he allegedly was having difficulty understanding the earlier interpreters.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

claim. (Dkt. No. 10-7.) Petitioner's asylum claim was finally presented on November 25, 2025. (Dkt. No. 10-8.) After presentment, the immigration judge denied all applications for relief and ordered Petitioner removed to Nepal. (Dkt. Nos. 10-8 at 2, 4; 10-9.) Plaintiff timely appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). (Dkt. No. 10-10.) The BIA set a briefing schedule in April 2026 and the appeal remains pending. (Dkt. Nos. 10-10; 9 at 3.)

**B. Procedural Background**

Petitioner filed a petition for writ of habeas corpus on May 12, 2026, asserting his prolonged detention without a bond hearing violates due process. (Dkt. No. 1 at 13.) Respondents respond that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b) (Dkt. No. 8 at 5), that he is not entitled to a bond hearing under *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019) (*id*. at 6–15), and that he failed to exhaust his administrative remedies (*id*. at 15). Petitioner filed a traverse reasserting his argument that he is entitled to a bond hearing under *Banda*. (Dkt. No. 11.)

## II    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance

of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

**III     ANALYSIS**

**A. The Court waives any prudential exhaustion requirement.**

Respondents argue the Court should require Petitioner to exhaust his administrative remedies before seeking habeas relief.  (Dkt. No. 8 at 15–16.)  Exhaustion of administrative remedies is prudential rather than jurisdictional and may be required where:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (quoting *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990)).  Exceptions to the exhaustion requirement include "situations . . . where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 n.4 (9th Cir. 1981).  Similarly, the exhaustion requirement is waived where the petitioner is "challenging issues other than the BIA's ruling on removability." *Laing v. Ashcroft*, 370 F.3d 994, 1001 (9th Cir. 2004) (citing *Marquez v. INS*, 346 F.3d 892 (9th Cir. 2003)).

The first factor weighs against requiring prudential exhaustion.  Respondents argue the BIA has "special expertise" and waiving the exhaustion requirement "would promote the avoidance of seeking a bond determination by the IJ or an appeal of similar orders to the BIA." (Dkt. No. 8 at 16.)  But here, the question is whether the Constitution requires Petitioner be granted a bond hearing.  Thus, the BIA's "expertise" in immigration bond decisions is

unnecessary to generate a proper record or reach a proper decision. *See Garcia v. Hyde*, Case No. 25-CV-585-JJM-PAS, 2025 WL 3466312, *7 (D.R.I. Dec. 3, 2025) (the petitioner "ultimately raises a constitutional challenge in his habeas petition, an area over which the Immigration Court and the BIA lack any authority to adjudicate, thereby rendering appeal to those bodies futile").

The second factor is neutral on whether to enforce prudential exhaustion. Although relaxation of prudential exhaustion could possibly encourage, as Respondents suggest, others to bypass the administrative appellate procedure (Dkt. No. 8 at 16), it is undisputed that Petitioner was placed into expedited removal proceedings and remains subject to the mandatory detention provisions found in 8 U.S.C. § 1225. Based on the number and types of habeas petitions being filed in this District, the Court has no reason to believe an immigration judge or the BIA would seriously evaluate whether Petitioner should receive a bond hearing when § 1225 is implicated. Thus, the idea that others will be encouraged to bypass the administrative process is tied more to the fact that the immigration court and the BIA refuse to consider requests for bond hearings if they conclude § 1225 applies.

As for the third factor, the Court finds it weighs against requiring prudential exhaustion. Where the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error—and as already pointed out, there is little confidence the immigration court or the BIA would grant a bond hearing without judicial intervention when faced with a person subject to § 1225.

Moreover, given the lengthy delays inherent in the current appeals process, the Court finds Petitioner will suffer irreparable injury in the form of prolonged detention if he is required to wait for a BIA decision before being permitted to file a habeas claim. *See Scott v. Wamsley*,

Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal.") (quoting *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 962 (N.D. Cal. 2019)).

Accordingly, the Court finds it appropriate to waive any requirement that Petitioner exhaust his administrative remedies before seeking habeas relief.

**B.  Petitioner is entitled to a bond hearing under *Banda*.**

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings.  U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

While Petitioner's detention is statutorily mandated under 8 U.S.C. § 1225(b), his continued detention must still comport with due process.  In *Jennings*, the Supreme Court held that § 1225(b)—under which Petitioner is detained—"unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings."  *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1115 (W.D. Wash. 2019) (citing *Jennings*, 583 U.S. at 297, 303).  While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy

precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See Banda*, 385 F. Supp. 3d at 1106. However, "'[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Maliwat v. Scott*, No. C25-00788-TMC, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (collecting cases).

In assessing the constitutionality of prolonged mandatory detention, the *Banda* court declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–1107. Rather, the court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–859 (D. Minn. 2019)). Courts in this district have now adopted the "*Banda* test" to assess when detention violates due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3–4; *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *6 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom. Belqasim v. Hermosillo*, No. 2:25-CV-01282-LK, 2025 WL

3170929 (W.D. Wash. Nov. 13, 2025); *Hong v. Mayorkas*, No. 20-cv-01784-LK, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).  The Court will likewise apply the *Banda* test to determine whether Petitioner's continued detention without a bond hearing violates due process.

The first and "most important factor" under the *Banda* test is the length of detention.  385 F. Supp. 3d at 1118.  At the time of this order, Petitioner has been detained for sixteen and one-half months.  Thus, his civil detention has reached the length of what many courts in this district have found to be unreasonable.  *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1118–1119 (finding that petitioner's length of detention "strongly favors" a bond hearing because "Petitioner has been in detention for approximately 17 months, which is a very long time."); *Cardozo v. Bostock*, No. C25-00871-TMC, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding petitioner's 12-to-13-month detention favored granting a bond hearing); *Maliwat*, 2025 WL 2256711, at *2 ("nearly" 12 months); *Rahman v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, No. 2:24-CV-02132-JHC-TLF, 2025 WL 1919252 (W.D. Wash. July 11, 2025) ("almost 12 months"); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592-RSL-MLP, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, No. C23-1592-RSL-MLP, 2024 WL 1676681 (Apr. 18, 2024) (11 months).  The first and most important *Banda* factor weighs in favor of granting a bond hearing.

The second *Banda* factor also weighs in favor of granting a bond hearing.  385 F. Supp. 3d at 1118.  Where "an appeal ha[s] already been filed," "courts [have] found that the length of appeal favor[s] the petitioner[.]"  *Maliwat*, 2025 WL 2256711, *5 (collecting cases).  Here, Petitioner has filed an appeal with the BIA, which remains pending.  It is unclear when the administrative appeal will be decided or how long it could take to complete any subsequent

judicial review.  It, therefore, is not unreasonable to conclude the administrative appeal and judicial process could take years and that future detention would continue for quite some time.  Thus, the second *Banda* factor weighs in favor of granting a bond hearing.

As for the third *Banda* factor—conditions of detention—Petitioner raises serious questions about his confinement.  Petitioner identifies his conditions are like that of a jail or other penal institution.  He asserts that he is housed with over a hundred individuals in a single room "with no windows, fresh air, or sunlight, nearly twenty-four hours a day," assigned a cot to sleep on, is restricted in his movement, subjected to "counts" three times a day, and subjected to lights being turned off at 10:00 p.m. and being turned on at 5:00 a.m.  (Dkt. No. 2 at 2.)  He also asserts he was not given a Bible for approximately a year and can only talk to his family once every ten days.  (*Id*. at 2–3.)  Respondents confirm the NWIPC is run by a private contractor where detainees are separated by classification level, that their movement within the facility is "unit-specific," and that detainees are restricted during counts.  (Dkt. No. 9 at 3.)  Petitioner also claims, though Respondents dispute, that NWIPC has "many insects in the bathroom;" bedbugs; unsafe, insufficient, or spoiled food and water; and inadequate medical care.  (Dkt. Nos. 2 at 2; 9 at 4.)  Based on the similarities between the operation of a jail or prison facility and the operation of the NWIPC, the Court finds the third *Banda* factor weighs in favor of granting a bond hearing.

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the petitioner.  385 F. Supp. 3d at 1118.  Undeniably, Petitioner did create some delay in his removal proceedings by feigning an inability to understand the court-provided interpreter at the May 7 and May 20, 2025, immigration court hearings.  Petitioner's conduct delayed the removal proceedings by a little under two months.  Notwithstanding, this is only two months out of the 16 months of detention Petitioner has experienced.  Thus, the effect of Petitioner's conduct

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 9

on his total length of detention at the NWIPC is marginal.  Accordingly, the Court finds Petitioner's delay weighs only slightly against Petitioner.

Under the fifth *Banda* factor, the Court considers delays in the removal proceedings caused by the respondents.  385 F. Supp. 3d at 1118.  The record indicates removal proceedings were delayed because Respondents would not accept Petitioner's asylum application fee.  This is confirmed by the immigration judge's statement: "I think it's tragic and outrageous that the Department of Homeland Security is not able to accept your fee payment for the Asylum Application.  I completely understand your frustrations.  I'm also frustrated.  I'm hoping that the Department will figure out how to accept your fee payment soon." (Dkt. No. 10-7 at 3–4.) There also appears to have been a small delay arising from the unavailability of an interpreter at Petitioner's individual hearing on November 12, 2025.  (*See* Dkt. No. 1 at 25.)  Based on these circumstances, and drawing a similar conclusion to that of the fourth factor but in reverse, the Court finds the fifth *Banda* factor weighs only slightly in favor of Petitioner.

Under the final *Banda* factor, the Court considers the likelihood that removal proceedings will result in a final order of removal.  385 F. Supp. 3d at 1118.  Because the outcome of Petitioner's asylum application is unknown, it would be speculative to evaluate this factor.  Thus, the sixth *Banda* factor is neutral.

Having considered and weighed the *Banda* factors, the Court concludes Petitioner's prolonged detention violates due process.

### C.  Bond hearing

Petitioner "requests a bond hearing where the Government must prove that any continued detention is justified by clear and convincing evidence. (*See* Dkt. No. 1 at 18) (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v.*

*Rodriguez*, 583 U.S. 281 (2018)).  Respondents argue only that they are not obligated to provide Petitioner a bond hearing but do not discuss the appropriate standard for a bond hearing in the event one is ordered.  (*See* Dkt. No. 8.)

"*Singh* relied on the Due Process Clause in determining the procedural rights due to alien detainees . . . in service of an implied statutory right to a bond hearing for persons detained under § 1226(c)—an implied right that the Supreme Court has now rejected."  *Rodriguez Diaz*, 53 F.4th at 1202.  However, *Singh*'s conclusion that the government must prove by clear and convincing evidence that a noncitizen is a flight risk or danger to the community to justify continued detention was "based . . . on general principles of procedural due process [after] reasoning that a detained person's liberty interest is substantial."  *Id*. at 1199.  Thus, although *Singh* relied on a nonexistent statutory right to a bond hearing in announcing the procedural rights required under the Due Process Clause for conducting a bond hearing, the Court finds no reason to conclude that the Due Process Clause allows for less procedural rights when the Due Process Clause itself, rather than a statute, requires a bond hearing.  Other courts in this district have reached similar conclusions.  *See, e.g.*, *Dovlatov v. Hernandez*, No. 2:26-cv-00826-JNW, 2026 WL 1030454, *3 (W.D. Wash. Apr. 16, 2026); *Rahmani v. Bondi*, No. C26-362-KKE, 2026 WL 638364, *6 (W.D. Wash. March 6, 2026); *Toktosunov v. Wamsley*, No. 2:25-cv-1724-TL, 2025 WL 3492858, *6 (W.D. Wash. Dec. 5, 2025).

## IV    ORDER

Accordingly, for the reasons articulated herein, the Court finds and ORDERS that Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED.

    1.    Petitioner's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.

2.      Within FOURTEEN (14) days of this order, Respondents must provide Petitioner with an individualized bond hearing.  At the bond hearing, Respondents carry the burden of proving by clear and convincing evidence that Petitioner presents a flight risk or a danger to the community to justify his continued detention.  In the event that a bond is granted, Respondent is ORDERED to release Petitioner within twenty-four (24) hours of the hearing subject to reasonable conditions of supervised release.

3.      If the individualized bond hearing is not conducted within fourteen days of this order, Petitioner MUST be released no later than the fifteenth day after this hearing under appropriate conditions of supervised release.

4.      Petitioner and Respondents MUST file a status report on the status of Petitioner's bond hearing no later than FIFTEEN (15) days from this order. The status report MUST detail if and when the bond hearing occurred, if bond was granted or denied and, if denied, the reasons for that denial.  The Clerk is directed to calendar this event.

Dated this 4th day of June, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 12